UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HUMA THERAPEUTICS, LTD and
DANOOSH VAHDAT,

                     Plaintiffs,

        v.

U.S. DEPARTMENT OF STATE, MARCO
RUBIO, in his official capacity as Secretary of
the U.S. Department of State, JANE DOE, in
her official capacity as Minister Counselor for
Consular Affairs, U.S. Embassy, London,
United Kingdom, JOHN DOE, in his official
capacity as Consular Officer, U.S. Embassy,
London, United Kingdom,

                     Defendants.

25-cv-1928 (SHS) (JEW)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

Plaintiffs Huma Therapeutics, LTD and Danoosh Vahdat allege that defendants, the U.S. Department of State, the Secretary of State, and officials in the U.S. Embassy in London, have (1) unreasonably delayed the adjudication of Vahdat's L-1A and B-1/B-2 visa applications and (2) acted arbitrarily and capriciously by failing to apply the reciprocity schedule applicable to the United Kingdom when issuing Vahdat a prior L-1A visa. Plaintiffs seek, *inter alia*, a court order compelling defendants to complete the processing of Vahdat's visa applications forthwith. Defendants have moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants defendants' motion and dismisses the complaint.

**I. BACKGROUND**

**A. Statutory and Regulatory Framework**

The Immigration and Nationality Act ("INA"), codified as amended at 8 U.S.C. § 1101 *et seq.*, governs the admission of foreign nationals into the United States, including temporary admission of nonimmigrants for specific purposes. L-1A and B-1/B-2 are visa categories pursuant to which a foreign national may gain approval to enter the United States. The L-1A nonimmigrant classification permits a corporation to transfer a manager or executive employed at an affiliated foreign office to an office in

1

the United States for a set period of time. *See* 8 U.S.C. § 1101(a)(15)(L); 8 C.F.R. § 214.2(l); 22 C.F.R. § 41.54.  The B-1 nonimmigrant visa classification allows noncitizens to enter the United States for business purposes, and the B-2 nonimmigrant classification enables noncitizens to enter the United States for pleasure. 8 U.S.C. § 1101(a)(15)(B); 22 C.F.R. § 41.31.

A foreign national seeking entry under one of the above visa classifications is generally required to file certain application materials and thereafter appear for an interview with a consular officer, *see* 8 U.S.C. § 1202(h); 22 C.F.R. §§ 40.1(l)(1), 41.103, who then adjudicates the visa application, *see* 8 U.S.C. §§ 1201(a)(1), 1202(d).  As relevant here, "[w]hen a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer *must* issue the visa [or] refuse the visa." 22 C.F.R. § 41.121(a) (emphasis added).

### B.  Facts[1]

Danoosh Vahdat is a dual national of the United Kingdom and Iran and the founder and Chief Executive Officer of the global health technology company Huma Therapeutics, LTD. (Dkt. No. 1 ("Compl.") ¶ 2, 4, 16.)  Vahdat has not visited Iran in more than a decade, and his only currently valid passport was issued by the United Kingdom. (*Id.* ¶¶ 4, 16.)

On three occasions from 2019 to 2024, the U.S. Department of State granted Vahdat an L-1A visa, enabling Vahdat to enter the United States. (*Id.* ¶¶ 41–46.)  While Vahdat's first and second L-1A visas permitted multiple entries into the United States over multiple years, Vahdat's third L-1A visa—issued on October 23, 2024—allowed him to enter the United States only once and was valid only for the three-month period from October 23, 2024, to January 20, 2025. (*See id.* ¶ 46.)  After "immediately" contacting the U.S. Embassy in London through counsel, Vahdat was informed that the reason his third L-1A visa was more restrictive than his initial two L-1A visas was because the Embassy had chosen to apply the reciprocity schedule applicable to Iran when issuing Vahdat's third L-1A visa, rather than the more generous reciprocity schedule applicable to the United Kingdom. (*Id.* ¶¶ 47–48.)

Following the issuance of his third L-1A visa, Vahdat applied for both a fourth L-1A visa and a B-1/B-2 visa. (*Id.* ¶ 52.)  Vahdat appeared at the U.S. Embassy in London for an interview in connection with these applications on November 7, 2024. (*Id.* ¶ 53.)  On that same day, Vahdat's visa applications were "refused" and placed in a state of administrative processing. (*Id.* ¶ 55.)  The parties agree that administrative processing is

---

[1] The Court accepts the facts alleged in the complaint as true for purposes of this motion.

a form of additional security screening.[2] (*See id.* ¶¶ 28–31, 58; Dkt. No. 24 ¶¶ 7, 11.) According to the complaint, Vahdat's applications remain in administrative processing. (Compl. ¶ 55.)

## II.  APPLICABLE LEGAL STANDARDS

Pursuant to Rule 12(b)(1), a party may move to dismiss a claim for lack of subject matter jurisdiction.  A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A party may also move to dismiss a claim pursuant to Rule 12(b)(6) where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 401 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555).  In considering a motion to dismiss brought pursuant to either Rule 12(b)(1) or 12(b)(6), the Court takes all facts alleged in the complaint as true and draws all inferences in favor of the plaintiff. *See Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016).

## III.  DISCUSSION

### A.  Plaintiffs' "Unreasonable Delay" Claim

#### 1.  *Subject Matter Jurisdiction*

Defendants assert that the Court lacks subject matter jurisdiction over plaintiffs' claim that defendants have unreasonably delayed determining Vahdat's visa applications because Vahdat's visa applications have already been refused, thereby

---

[2] According to the Department of State's website, a visa application that has been refused may be placed in administrative processing where "additional information from sources other than the applicant may help establish an applicant's eligibility for a visa." U.S. Dep't of State, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [https://perma.cc/C73V-T8C8] (last visited June 29, 2026).

mooting plaintiffs' request to compel their adjudication. (*See* Dkt. No. 25 at 7–8.)  "In general a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (internal quotation marks and citation omitted).  The Court concludes that plaintiffs' unreasonable delay claim is not moot.  As in *Esghai v. U.S. Department of State*, No. 24-cv-2993, 2024 WL 4753799, at *3 (S.D.N.Y. Nov. 12, 2024) and *Rashed v. Blinken*, No. 24-cv-964, 2024 WL 4904701, at *2 (S.D.N.Y. Nov. 27, 2024), the relief that plaintiffs seek is an order directing defendants to complete the administrative processing of Vahdat's visa applications. (Compl. at 22.)  Indeed, status reports for Vahdat's visa applications accessed by plaintiffs from the Department of State's Consular Electronic Application Center website notify Vahdat that he "will receive another adjudication once such [administrative] processing is complete." (*See* Dkt. No. 28-1 at 3–4.)  As explained in Section III.A.3 below, the Court may order this processing be completed when a consular officer has failed to timely render a final determination on a visa application.  Accordingly, plaintiffs maintain a legally cognizable interest in the ultimate outcome of their claim, and the Court declines to dismiss their claim on mootness grounds.

### 2.  *Consular Nonreviewability*

Defendants next invoke the doctrine of consular nonreviewability, which prohibits "judicial review of a consular officer's denial of a visa." *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024).  A majority of courts within this Circuit have extended the doctrine of consular nonreviewability to prohibit judicial review of any part of the visa application process, including cases seeking to compel a decision on a visa application within a reasonable period of time. *See Abdo v. Tillerson*, No. 17-cv-7519, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019) (collecting cases).  However, as the U.S. Supreme Court recently observed, the doctrine of consular nonreviewability is non-jurisdictional. *Muñoz*, 602 U.S. at 908 n.4.  Accordingly, whether the doctrine should apply is a prudential consideration left to the determination of this Court rather than a question of the Court's jurisdiction.

This Court agrees with those courts that have distinguished between claims of unreasonable delay, on one hand, and challenges to the denial of visas, on the other, in determining whether to apply the doctrine of consular nonreviewability. *See, e.g., Ahmed v. Bitter*, No. 23-cv-189, 2024 WL 22763, at *5–6 (E.D.N.Y. Jan. 2, 2024).  Where consular officers are obligated to "review[] and adjudicate[]" nonimmigrant visa applications, 8 U.S.C. § 1202(d), the Court declines to invoke the doctrine of consular nonreviewability to insulate defendants from claims that they have been derelict in fulfilling their statutorily prescribed duties within a reasonable amount of time. *See* 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented

to it."); 5 U.S.C. § 706(1) (authorizing courts to "compel agency action . . . unreasonably delayed."). Accordingly, the Court proceeds to consider whether defendants are legally required to complete the administrative processing of Vahdat's visa applications and render a further decision on them.

### 3.   The Administrative Procedure Act

The Administrative Procedure Act ("APA") authorizes courts to "compel agency action . . . unreasonably delayed." 5 U.S.C. § 706(1). However, "the only agency action that can be compelled under the APA is action legally required." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (emphasis omitted). Relevant to plaintiffs' unreasonable delay claim, 8 U.S.C. § 1202(d) instructs that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." "When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a). The APA requires consular officers to "conclude" these functions "within a reasonable time." *See* 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it.").

Plaintiffs acknowledge that Vahdat's visa applications have been refused but assert that defendants are under an obligation to render a further decision on Vahdat's visa applications now in administrative processing. (*See* Compl. ¶ 64 (citing 8 U.S.C. § 1202(d)).) The Court agrees. The November 7, 2024 refusal of Vahdat's visa applications was not a final decision such that the adjudication of his applications may be said to have been "conclude[d]" as required by 8 U.S.C. § 1202(d) and 5 U.S.C. § 555(b). In a declaration submitted to this Court, an Attorney-Adviser in the Office of the Assistant Legal Adviser for Consular Affairs within the Department of State reports that "additional security screening is ongoing" in connection with Vahdat's visa applications. (*See* Dkt. No. 24 ¶¶ 7, 11.) The status reports for Vahdat's visa applications accessed by plaintiffs from the State Department's Consular Electronic Application Center website notify Vahdat that "[i]f you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete." (Dkt. No. 28-1 at 3–4.) Plaintiffs also allege that each of Vahdat's three prior L-1A visa applications were approved only after having been placed into administrative processing. (*See* Compl. ¶¶ 41–42, 44.) Because defendants have failed to conclude adjudication of Vahdat's visa applications presently in administrative processing, the Court must go on to assess whether the resulting delay is "unreasonabl[e]" pursuant to 5 U.S.C. § 706(1).

### a. The **TRAC** Factors

In evaluating claims of unreasonable delay under the APA, courts in this Circuit apply a six-part standard enunciated in *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). *See Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 84 (2d Cir. 2013).  Pursuant to this standard:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (citation modified).  While the *TRAC* factors are "fact-intensive," it is "not uncommon for courts to resolve unreasonable delay claims concerning visa adjudication on a motion to dismiss." *Ahmed*, 2024 WL 22763, at *7.

The first two *TRAC* factors weigh in defendants' favor.  They appraise "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  "Congress has not supplied a rule of reason by imposing a statutory deadline on considering visa applications, so the Court turns to case law as a guide to the content of the rule applicable here." *Augustin v. Blinken*, No. 23-cv-76, 2023 WL 4547993, at *5 (D.D.C. July 14, 2023) (citation modified).

"District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Waris v. Bitter*, No. 23-cv-9487, 2024 WL 3237914, at *7 (S.D.N.Y. June 28, 2024) (citation modified); *see also Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 76 (D.D.C. 2022) ("Although Siddiqui has been waiting for three years since he and his family were interviewed by the consular office [for L-1 and L-2 visas], that amount of time is in line with other decisions that have not found unreasonably delay.").  Vahdat appeared for an interview in connection with his visa applications on November 7, 2024—slightly more than a year and a half ago. (Compl. ¶ 53.)  A year and a half is an inadequate amount of time to support a plausible claim of unreasonable delay. *See, e.g., Waris*, 2024

6

WL 3237914, at *7.  Accordingly, *TRAC* factors one and two weigh in favor of defendants.

The remaining *TRAC* factors do little to resuscitate plaintiffs' unreasonable delay claim.  Factors three and five "look to the effects of agency delay." *Augustin*, 2023 WL 4547993, at *5.  Plaintiffs allege that Huma Therapeutics, LTD "has lost out on the opportunity to close several major acquisition opportunities in the United States" and continues to suffer from "missed investment opportunities and business losses" owing to delays in the processing of Vahdat's visa applications. (Compl. ¶¶ 15, 17.)  However, such "commercial" concerns "are not the kinds of hardships that tilt the third and fifth factors in favor of granting" plaintiffs' requested relief. *Swisher Int'l, Inc. v. U.S. Food & Drug Admin.*, No. 22-cv-954, 2024 WL 4119480, at *22 (D.D.C. Sep. 9, 2024) (internal quotation marks and citation omitted).  Thus, factors three and five also do not favor plaintiffs' position.

Plaintiffs are silent as to the sixth *TRAC* factor and thus the Court treats the sixth factor as neutral. *See Qi v. U.S. Citizenship & Immigr. Servs.*, No. 23-cv-8843, 2024 WL 2262661, at *7 (S.D.N.Y. May 17, 2024) ("Plaintiff does not allege bad faith, unfairness, or other impropriety, so the sixth *TRAC* factor is neutral.").  With respect to the fourth *TRAC* factor, "it is appropriate to refuse to grant relief, even though all the other factors considered in *TRAC* favor it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Pesantez v. Johnson*, No. 15-cv-1155, 2015 WL 5475655, at *4 (E.D.N.Y. Sep. 17, 2015) (citation modified).  Plaintiffs dispute that an order directing defendants to further process Vahdat's applications would have the effect of moving Vahdat to the front of the line since administrative processing is not completed on a first-in, first-out basis. (*See* Dkt. No. 28 at 11–12, 14–15; Compl. ¶¶ 32, 68.)  Plaintiffs also contend that defendants are wasting resources better spent on competing priorities by subjecting Vahdat to further security vetting. (*See* Dkt. No. 28 at 14–15 (citing Compl. ¶ 59).)  However, where Vahdat's applications have been placed in administrative processing in order for additional security procedures to occur, it is inconceivable that an order directing defendants to complete that vetting forthwith would result in no "shift[ing of] resources away from equally deserving applicants." *Pesantez*, 2015 WL 5475655, at *4 (citation omitted).  Accordingly, the Court determines that the fourth *TRAC* factor also weighs in favor of defendants.

\* \* \*

While the U.S. Department of State is indeed obligated to render a final determination on Vahdat's visa applications presently in administrative processing, the *TRAC* factors do not support that a final determination has been unreasonably delayed.  Accordingly, the Court grants defendants' motion pursuant to Rule 12(b)(6) to dismiss

plaintiffs' claim that defendants have unreasonably delayed the final determination of Vahdat's visa applications.

### B.  Plaintiffs' "Arbitrary and Capricious" Claim

Plaintiffs also seek an order from this Court "[d]eclar[ing] that the [d]efendants' grant of Mr. Vahdat's third L-1A visa application for three months single entry [from October 23, 2024, to January 20, 2025,] is arbitrary, capricious, and/or not in accordance with law" and compelling defendants to apply the reciprocity schedule for the United Kingdom to Vahdat's visa applications now in administrative processing as well as to any "subsequent nonimmigrant visa applications that Mr. Vahdat seeks." (Compl. at 22, ¶ 46.)  The Court agrees with defendants that plaintiffs' claim that defendants' actions are arbitrary and capricious is both moot and unripe. (*See* Dkt. No. 25 at 19–23.)

Vahdat's third L-1A visa expired on January 20, 2025. (Compl. ¶ 46.)  Plaintiffs therefore lack a legally cognizable interest in the outcome of their claim with respect to this visa. *See Murphy*, 455 U.S. at 481.

"To be justiciable, a cause of action must be ripe—it must present a real, substantial controversy, not a mere hypothetical question." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (internal quotation marks and citation omitted).  In assessing prudential ripeness, courts consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 691 (citation omitted).  The fitness analysis "is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *N.Y.C. Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008) (citation omitted).  As for hardship, the Court asks "whether the challenged action creates a direct and immediate dilemma for the parties.  The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Id.* at 134 (internal quotation marks and citations omitted).

With respect to Vahdat's two visa applications now in administrative processing as well as any visa applications he might later submit, plaintiffs' claim of arbitrary and capricious behavior by defendants is too contingent on future events to be ripe.  For plaintiffs to suffer from a present detriment, defendants must first approve one of Vahdat's visa applications presently in administrative processing or another visa application that Vahdat has yet to file.  In the absence of an approved application, plaintiffs' claim rests on mere speculation about the adjudication of visa applications that are still undergoing processing or have yet to be filed.  This is an insufficient basis on which to conclude that plaintiffs suffer from a present detriment.  It is also an insufficient basis on which to find plaintiffs' claim of arbitrary and capricious action fit for judicial review at this time.

\* \* \*

Because plaintiffs' claim that defendants acted arbitrarily and capriciously is moot and unripe, the Court grants defendants' motion to dismiss this claim pursuant to Rule 12(b)(1) and 12(b)(6).

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendants' motion to dismiss the complaint. (Dkt. No. 23.)  Plaintiffs have failed to plausibly plead a claim of unreasonable delay pursuant to the APA, and plaintiffs' claim that defendants acted arbitrarily and capriciously is both moot and unripe.

Dated:  New York, New York
        June 29, 2026

SO ORDERED:

Sidney H. Stein, U.S.D.J.

9